```
                   UNITED STATES DISTRICT COURT
                   WESTERN DISTRICT OF KENTUCKY
                        LOUISVILLE DIVISION


UNITED STATES OF AMERICA,     )    Case No. 3:21-CR-00017-DJH
                              )
         Plaintiff,           )
                              )
v.                            )
                              )
QUENTIN MCDOUGLE,             )
                              )    November 4, 2021
         Defendant.           )    Louisville, Kentucky


                            * * * * *

              TRANSCRIPT OF SENTENCING HEARING
             BEFORE HONORABLE DAVID J. HALE
                UNITED STATES DISTRICT JUDGE

                            * * * * *

APPEARANCES:

For United States:       Ann Marie Blaylock
                         U.S. Attorney's Office
                         717 West Broadway
                         Louisville, KY 40202

For Defendant:           Rob Eggert
                         600 West Main Street, Suite 200
                         Louisville, KY 40202

[Defendant present.]



                    Dena Legg, RDR, CRR, CCR-KY
                       Official Court Reporter
                       232 U.S. Courthouse
                       Louisville, KY 40202
                         (502) 625-3778

Proceedings recorded by certified stenographer, transcript
produced by computer.
```

```
 1        (Begin proceedings in open court at 11:40 a.m.)
 2             DEPUTY CLERK:  3:21-CR-17, United States of America
 3   versus McDougle.
 4             MS. BLAYLOCK:  Ann Marie Blaylock for the United
 5   States.
 6             THE COURT:  Where is -- oh, there's Mr. Eggert.
 7             MR. EGGERT:  I called Mr. McDougle.  He says he's
 8   coming up.  I was waiting for him out here.  I'm assuming he's
 9   gonna be here momentarily, but that's where I am.
10             THE COURT:  Would you mind to check with your
11   colleagues and see if Mr. McDougle has been processed through
12   the entry point downstairs.
13             COURT SECURITY OFFICER:  Yes, sir.  Sir, they believe
14   he just came through processing.  They are getting him through
15   now.  He's gonna come right up.
16             THE COURT:  Thank you.
17             COURT SECURITY OFFICER:  Yes, sir.
18        (Off the record.)
19             COURT SECURITY OFFICER:  Your Honor, they're coming
20   down the hallway now.
21             THE COURT:  Thank you.
22        (Defendant entered courtroom.)
23             THE DEFENDANT:  Sorry, Judge.
24        (Mr. Eggert conferring with defendant off the record.)
25             THE COURT:  Let's call the case again.
```

1          DEPUTY CLERK:  3:21-CR-17, United States of America
2    versus McDougle.
3          MS. BLAYLOCK:  Ann Marie Blaylock for the United
4    States.
5          MR. EGGERT:  Good morning, Your Honor.  Rob Eggert and
6    I'm here for Mr. McDougle, and he is present.  We apologize for
7    the delay.  I think they all went through the medical -- the
8    metal detector at the same time, and it took longer.  And,
9    obviously, he should have anticipated that.  So I apologize to
10   the court on his behalf.
11         THE COURT:  Very well.  Let's proceed then with this
12   sentencing hearing.
13      Mr. Eggert, have you and Mr. McDougle received and reviewed
14   the presentence investigation report?
15         MR. EGGERT:  Yes.
16         THE COURT:  Mr. McDougle, have you had enough time to
17   go through the PSR with Mr. Eggert?
18         THE DEFENDANT:  Yes, sir.
19         THE COURT:  Let's look at the guideline calculations
20   that are contained in the PSR.  They are set out on page 7.
21   Paragraph 23 explains the reason for the base offense level of
22   24 for violation of Title 18 of the United States Code,
23   Section 922(g)(1), which makes it a felony offense for a person
24   previously convicted of a felony to possess a firearm.
25      Under Guideline 2K2.1(a)(2), given the offense to which

1   Mr. McDougle has admitted occurred subsequent to his felony
2   convictions for a crime of violence, that being assault under
3   extreme emotional disturbance and a conviction for trafficking
4   in a controlled substance, first degree, both of those here in
5   Jefferson Circuit Court, that then triggered the enhancements
6   under 2K2.1(a)(2) setting the base offense level at a 24.
7       There are no further enhancements after application of
8   acceptance of responsibility credits.  It results in a total
9   offense level of 21.  And I presume, Ms. Blaylock, that the
10  government has no objection to application of all three levels?
11          MS. BLAYLOCK:  That is correct, Your Honor.  We move
12  for the third point.
13          THE COURT:  So I will apply those as indicated in the
14  PSR.
15      Mr. McDougle's criminal history score is a V.  And so when
16  Level 21 is applied to the criminal history score of V, the
17  guidelines recommend a range of custody of between 70 and
18  87 months, a supervised release range of one to three years, and
19  a fine range of 15,000 to 150,000.  Have I stated the guideline
20  calculations correctly as they appear in the PSR?
21          MS. BLAYLOCK:  The United States believes those are
22  correct, Your Honor.
23          MR. EGGERT:  Same with the defense, Your Honor.
24          THE COURT:  Are there any objections to the PSR or the
25  guideline calculations that we need to address?

1               MS. BLAYLOCK:  No, Your Honor.

2               MR. EGGERT:  No, Your Honor.

3               THE COURT:  I will then adopt the PSR without

4    objection.  It will be filed in the record under seal.  In the

5    event of an appeal, the parties, court, and counsel will of

6    course have access to it.

7         I have carefully considered the contents of the PSR and the

8    materials submitted by counsel.  I took the change of plea from

9    Mr. McDougle in an earlier hearing, and following that review, I

10   have determined that I will accept the parties' (C) plea

11   agreement and sentence accordingly.

12        Are there any motions to take up first from the government?

13              MS. BLAYLOCK:  No, Your Honor.

14              MR. EGGERT:  Your Honor, just -- actually, a couple of

15   things.  One, it may be 'cause he has a gun.  The Bureau of

16   Prisons won't do it, but I was gonna ask for a recommendation of

17   RDAP.  They seemed to change the regulations, and it's quite

18   clear that Mr. McDougle has a drug and alcohol history and going

19   back to, unfortunately, when he was a young person.

20        I would ask for a recommendation, if the court gives it, for

21   a destination closest to home.  And, finally, we apologize for

22   the hiccup today, but otherwise I think Mr. McDougle has been

23   perfect on home detention.  He's stayed in touch with counsel.

24   He has not had any problems.  He's been out a significant length

25   of time.  He's not going anywhere.  This is his entire -- his

1   family is all here and still supporting him and made a point of
2   going here today, and so we would ask for voluntary surrender
3   for Mr. McDougle.
4       THE COURT: Let's bookmark all of those points. We'll
5   take them up after I impose the sentence.
6     Is there anything else by way of argument or discussion with
7   respect to the factors set out in 18 U.S.C. 3553(a)?
8       MS. BLAYLOCK: Not from the United States, Your Honor.
9       MR. EGGERT: No. In light of the court saying it will
10  accept the plea agreement, I would not make an argument.
11      THE COURT: That's fine. Does Mr. McDougle wish to
12  address the court, which is his right?
13      MR. EGGERT: I don't think so, Judge.
14      THE COURT: That's fine. Then are the parties ready
15  for me to then state the sentence?
16      MS. BLAYLOCK: Yes, Your Honor.
17      MR. EGGERT: Yes, Your Honor.
18      THE COURT: As I have indicated, I have carefully
19  considered the applicable sentencing guidelines and carefully
20  reviewed the factors set out by Congress in Title 18 of the U.S.
21  Code at Section 3553(a). I have considered the materials
22  submitted, as I said, by counsel, and following our discussion
23  here this morning, I will impose the following sentence:
24    It is the judgment of the court that the defendant, Quentin
25  McDougle, is committed to the custody of the Bureau of Prisons

Case 3:21-cr-00017-DJH Document 79 Filed 04/08/22 Page 7 of 14 PageID #: 290

7

1    for a term of 70 months as to Count 2 of the indictment.

2       Upon release from imprisonment, Mr. McDougle shall be placed

3    on supervised release for a term of three years as to Count 2 of

4    the indictment.  The defendant shall abide by the standard

5    conditions of supervision adopted by the court, as well as the

6    special conditions that have been detailed in the presentence

7    investigation report.  These include drug testing, substance

8    abuse treatment, a search condition, and cognitive behavioral

9    treatment, all of which will be explained further to

10   Mr. McDougle by the U.S. Probation Office.

11       Mr. McDougle is required to pay a special penalty assessment

12   fee of $100 as to the sole count of conviction.  This sanction

13   shall be paid in accordance with a schedule of payments page,

14   which will be contained in the judgment.  Restitution is not an

15   issue in this case, and I will waive imposition of a fine as

16   well as the cost of incarceration and supervision due to the

17   defendant's inability to pay.

18       As I've indicated, I've carefully considered the history and

19   characteristics of Mr. McDougle.  Mr. McDougle no doubt has had

20   a difficult life.  It includes suffering gunshot wounds as

21   detailed in the PSR, paragraph 67, in 2011 when he was young and

22   2020.

23       Unfortunately, Mr. McDougle also has accumulated a serious

24   criminal history, which includes prior gun related crimes and

25   crimes of violence as detailed in paragraphs 45 and 46 of the

```
 1   PSR.
 2        I've also considered the nature and circumstances of the
 3   offense here.  This is a felon in possession case.  As was
 4   outlined at the outset of the hearing, the advisory sentencing
 5   guidelines produce a total offense level of 21 against a
 6   criminal history category of V, resulting in a guideline range
 7   of 70 months' to 87 months' custody, a fine range of 15,000 to
 8   150,000, and a range of one to three years of supervised
 9   release.
10        As to the other relevant factors that are set out in 18
11   U.S.C. 3553(a), I conclude that this guideline sentence properly
12   reflects the seriousness of Mr. McDougle's offense.  It will
13   promote respect for the law that prohibits those previously
14   convicted of a felony offense from possessing a firearm.  The
15   sentence of 70 months' custody followed by three years of
16   supervised release should protect the public from further crimes
17   of Mr. McDougle.
18        Accordingly, having accepted the (C) plea, I conclude that
19   the sentence of 70 months, followed by three years' supervised
20   release, is sufficient but not greater than necessary to comply
21   with the purposes set forth in 3553(a)(2).  It satisfies the
22   applicable statutory provisions and conforms with the parties'
23   (C) plea.  I further conclude that a sentence any lower than
24   70 months would not represent just punishment in this particular
25   case.
```

1 Are there any objections to the sentence that I've just
2 announced that have not previously been made?
3     MS. BLAYLOCK: No, Your Honor.
4     MR. EGGERT: No, Your Honor.
5     THE COURT: And, Ms. Blaylock, I believe that the
6 parties' plea agreement contains an appeal waiver; is that
7 correct?
8     MS. BLAYLOCK: That is correct, Your Honor.
9     THE COURT: And so, Mr. McDougle, I need to now advise
10 you of your appeal rights. You may recall from your change of
11 plea hearing that we discussed how your plea agreement -- in
12 exchange for concessions made, you agreed to waive your right to
13 appeal your guilty plea, conviction, or the sentence that I just
14 imposed in this case.
15 Now, these appeal waivers are generally considered valid,
16 but if you believe yours is invalid for any reason, you may
17 present that theory to the Court of Appeals. You may also
18 appeal on the basis of either exception that is included in your
19 appeal waiver, that being a claim of ineffective assistance of
20 counsel and/or prosecutorial misconduct.
21 To initiate your appeal, you must first file a notice of
22 appeal. If you need the assistance of the clerk's office in
23 doing that, they will upon request assist you. If you cannot
24 afford the fee associated with that filing, you may ask that it
25 be waived. And if you cannot afford counsel on appeal, you may

```
 1   ask that counsel be appointed to represent you free of charge.
 2   Do you understand these rights as I've outlined them to you?
 3              THE DEFENDANT:  Yes, sir.
 4              THE COURT:  Mr. Eggert, anything further with respect
 5   to Mr. McDougle's Rule 32 rights that we need to cover?
 6              MR. EGGERT:  No, Your Honor.
 7              THE COURT:  Now, let's circle back to the first issues
 8   that you raised regarding recommendations to be included in the
 9   judgment.
10       I am -- given my review of the PSR, I am -- I think it's
11   appropriate for me to recommend consideration of Mr. McDougle
12   for participation in any of the Bureau of Prisons' drug abuse
13   programs to include RDAP.  I don't know about his eligibility
14   or --
15              MR. EGGERT:  Yes.
16              THE COURT:  And you probably understand this better
17   than I do, but there are occasions where a defendant may be
18   permitted to participate but not receive the credit -- may not
19   be eligible to receive the credit for attending the program.
20   Those are procedures and policies beyond the purview of this
21   court.
22       So I wouldn't begin to suggest how that works in any detail,
23   but given his background, I am -- I'm happy to include a
24   recommendation that he be evaluated for participation in those
25   programs and also to include a recommendation that he be housed
```

1  in a facility as close to his home here in Louisville.  Anything
2  else long those lines?
3           MR. EGGERT:  No, Your Honor.
4           THE COURT:  What is the government's position here
5  with respect to Mr. McDougle's bond?  I believe that under the
6  requirements of 18 U.S.C. 3143(a), it would be incumbent upon
7  the court to order Mr. McDougle's detention at this stage.
8           MS. BLAYLOCK:  The United States doesn't take a
9  position on that.  I think he has done fine while he's been out.
10 There's a concern today about him not being here.  Given the
11 number of family members in the room, I can see how it might
12 have taken quite some time to get through security.
13    And having consulted with probation, it appears as though he
14 hasn't had any violations when he's out.  So I don't think he's
15 a risk of nonappearance, and I don't think he's a danger to the
16 community.
17          THE COURT:  What's the position of the probation
18 office with respect to detention?
19          PROBATION OFFICER:  Your Honor, I spoke to his
20 pretrial services officer this morning.  He's been on GPS since
21 December of last year.  There's been no issues that we're aware
22 of.  We would request that he stay out on bond.
23          THE COURT:  Very well.  I think I will then make the
24 necessary clear and convincing finding required by 18 U.S.C.
25 3143(a) to indicate in the record that I do not believe he --

1   Mr. McDougle is a threat or is likely to flee, but I will order
2   that he remain on the monitoring equipment.
3       And I will -- Mr. McDougle, I will underscore for you the
4   importance of compliance going forward.  Your status has now
5   changed since you have been sentenced, and you're going to need
6   to continue with your full compliance with the directions given
7   you by the U.S. Probation Office.  I'm sure that Mr. Eggert has
8   already told you that.
9       It is not typical for someone who has been sentenced to the
10  length of sentence that you've just received for the nature of
11  the offense to which you admitted your conduct to remain out at
12  this stage.  It is much more typical that the sentencing court
13  would order a defendant under circumstances like this be
14  detained.  And so I am making that decision on the
15  recommendation of the probation office and with the government's
16  acquiescence here but also primarily based on your track record
17  through the pendency of this case.
18      If that changes in any way -- in other words, if you fail to
19  continue on this same path, we will not hesitate to order your
20  detention.  Do you understand that?
21          THE DEFENDANT:  Yes, sir.
22          THE COURT:  And then I want to say one final thing
23  before we conclude to you, Mr. McDougle, and to your -- it's
24  good that your family is here with you.  I appreciate very much
25  their presence and their show of support for you.

1        This day is not a banner day for you because you've been
2   sentenced to a substantial term, but I want to emphasize a
3   couple of things to you.  One, it could have been significantly
4   worse for you today.  Seventy months is a long sentence, but it
5   could have been much more challenging for you.
6        And I'm sure, again, that I'm not telling you anything here
7   in open court that Mr. Eggert has not already told you as you
8   confer with him, but I want you to understand that that's from
9   my viewpoint.  That's how I see this case.  It could have been
10  much worse for you.
11       Look, you are a young man, and you've got a lot of life
12  ahead of you.  I look at your record and I'm very concerned,
13  very concerned, but I'm encouraged by your family being here.
14  And so in front of them I want to encourage you to turn a
15  corner.  Put this behind you.  You can never touch a firearm
16  again.  You understand that?
17            THE DEFENDANT:  Yes, sir.
18            THE COURT:  I mean never.  It's gotten you in trouble.
19  It's threatened your life, and it needs to no longer be a part
20  of your life going forward.  You need to resolve to put that
21  behind you the minute you walk out of this courtroom.  That
22  needs to be forefront in your head.
23       Spend the next week or two or however much time you have
24  left before you go in with your family.  Get all the
25  encouragement you can get.  You're gonna need it going forward,

1    but that needs to be your number one goal that when you get out
2    and come back here and start working with probation for that
3    three-year period, that you're gonna turn a corner in your life
4    and you're not gonna have anymore involvement with firearms,
5    none, zero.  All right?
6            THE DEFENDANT:  Yes, sir.
7            THE COURT:  I wish you well.  Thank you.
8        (Proceedings concluded at 12:06 p.m.)
9                       C E R T I F I C A T E
10       I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
11   THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.
12
13
14   _____s/Dena Legg_____           _April 8, 2022_
     Certified Court Reporter No. 20042A157     Date
     Official Court Reporter
15
16
17
18
19
20
21
22
23
24
25